UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE APPLICATION FOR JUDICIAL ASSISTANCE PURSUANT TO 28 U.S.C. 1782 OF EDWARD D. FAGAN | *<br>*<br>*<br>*<br>*     Civil Action No. 19-mc-91210-ADB<br>*<br>*<br>*<br>* |

**MEMORANDUM AND ORDER DENYING APPLICATION
FOR DISCOVERY PURSUANT TO 28 U.S.C. § 1782**

BURROUGHS, D.J.

*Pro se* Petitioner Edward D. Fagan ("Fagan") seeks the issuance of an *ex parte* subpoena pursuant to 28 U.S.C. § 1782 ("Section 1782") for discovery that he claims will aid in a criminal investigation that is underway in the Republic of South Africa.  For the reasons explained herein, the application [ECF No. 1] is DENIED.

I.      **BACKGROUND**

On January 18, 2019, a Canadian resident named Russell Daneluk ("Daneluk") assigned Fagan the "absolute right and authority to take actions" including filing "administrative, regulatory, civil and criminal complaints" in an effort to recover on Daneluk's claims related to certain "monies that were paid and sent by . . . wire transfers between 2016 and 2018." [ECF No. 1-1 at 9].  In exchange for the assignment of claims, Fagan received "consulting fees and reimbursement of expenses" and "[u]pon [a] successful recovery" will receive "an equitable and fair division of any additional monies and assets that may be recovered." Id. at 9–10.

The assigned claim that is relevant to the requested subpoena allegedly arose from a scheme that sought to defraud individuals into transferring money to an advance fee scam

fraudster (a "419 scam" or "Nigerian Prince scam").  [ECF No. 1 ("App.") ¶¶ 10, 25].[1]  Such

schemes are disturbingly common.  The fraudsters typically assert that they need a small sum of

money in order to obtain a larger sum from some third-party.  The fraudster promises to repay

the victim an amount greater than the small sum that the victim provides once the larger sum is

secured, but the victim never gets paid back.  Based on the evidence submitted by Fagan,

however, it appears unlikely that Daneluk or his associates were in fact deceived.  See [ECF No.

1-1 at 13–45].

　　　　After Daneluk assigned Fagan the claims, Fagan contacted the Federal Bureau of

Investigation and the South African Police Service.  See [ECF No. 1-1 at 2–7].  Fagan met with

an FBI agent on March 7, 2019 and received follow-up requests for more information from the

FBI on March 13 and April 3, 2019, although it is unclear whether Fagan provided the requested

information.  See id. at 5–7.  Fagan filed a complaint with the South African Police Service that

was recorded as case # 347/01/2019, which Fagan asserts is reflective of "ongoing

investigations" that will lead to "future prosecutions."  App. ¶ 29.  The only evidence of Fagan's

engagement with the South African authorities is an illegible photograph and an email copying

Fagan that reads: "Mr E.D. Fagan ,[sic] the complainant who fell victim to internet fraud where

over R181 000 000.00 (one hundred and eighty one million rand) was lost / Deposited money

into around the world in countries like USA and China to mention few. The case is highly

---

[1] The assignment agreement is "governed by the laws of the United States and Canada" and
contains a provision stating that "Fagan is not and will not offer legal advice . . . ."  [ECF No. 1-1
at 10].  This provision appears to have been necessary because Fagan is no longer a licensed
attorney.  In re Fagan, 58 A.D.3d 260, 266 (N.Y. App. Div. 2008) (disbarring Fagan), appeal
denied, 908 N.E.2d 928 (Table) (N.Y. Apr. 28, 2009); see Molefi v. Oppenheimer Tr., No. 03-
CV-5631, 2007 WL 538547, at *8 (E.D.N.Y. Feb. 15, 2007); Ass'n of Holocaust Victims for
Restitution of Artwork & Masterpieces v. Bank Austria Creditanstalt AG, No. 04-CV-3600,
2005 WL 2001888, at *4 (S.D.N.Y. Aug. 19, 2005); see also In re Ski Train Fire in Kaprun
Austria on Nov. 11, 2000, No. 03-CV-8960, 2007 WL 2398697, at *3 (S.D.N.Y. Aug. 16, 2007).

complicated and requires / Assistance at international Level / Please advise on the above matter."
[ECF No. 1-1 at 2].  Fagan, however, does not claim to have himself fallen victim to an alleged
fraud, so the reliability of the document is uncertain.

Fagan now seeks discovery for use in a foreign proceeding pursuant to 28 U.S.C. § 1782.
He claims that he, "his partners[,] and predecessors are victims of a scheme that involved
requests for monies made through emails sent to an [*sic*] by a woman named 'Kari Peters' . . .
who was allegedly an heir to inheritance assets that were held in Nigeria but which could be
transferred to the United States."  App. ¶ 42.  The scheme used emails sent with Chase Bank and
Federal Deposit Insurance Corporation logos that were sent from addresses including
inheritancedocument@fddic.com and chaseheadquarters@draftissue.com.  App. ¶ 10.  Fagan
requests a subpoena for discovery from PUBLICDOMAINREGISTRY.COM and P.D.R.
SOLUTIONS LLC, which he claims are responsible for the domain names from which the
fraudulent emails at issue originated.  App. ¶¶ 144–48.  Specifically, Fagan seeks a subpoena
compelling production of material showing the "personal identifying details, such as name,
physical addresses, phone numbers and other contact information of person / entities that
operated" the referenced email addresses.  [ECF No. 1-1 at 58].

## II.   DISCUSSION

Section 1782 authorizes interested persons to seek discovery in the United States for use
in foreign proceedings.

> [Section] 1782 is the product of over 150 years of Congressional effort and
> manifests the intent to provide "federal-court assistance in gathering evidence
> for use in foreign tribunals."  The text of § 1782 provides that granting discovery is
> proper only if: 1) the person from whom discovery is sought "resides or is found"
> in the district where the court sits; 2) the request seeks evidence (the "testimony or
> statement" of a person or the production of a "document or other thing") "for use
> in a proceeding in a foreign or international tribunal"; 3) the request is made by a

foreign or international tribunal or by "any interested person"; and 4) the material sought is not protected by "any legally applicable privilege."

In re Schlich, 893 F.3d 40, 46 (1st Cir. 2018) (first quoting Intel Corp. v. Advanced Micro Devices, Inc., 542 U.S. 241, 247 (2004), then quoting 28 U.S.C. § 1782).  "If all of these statutory requirements are met, the district court is authorized, but not required, to provide judicial assistance by permitting discovery."  Id. at 46.  District courts are required to exercise their discretion under Section 1782 "in light of the twin aims of the statute: 'providing efficient assistance to participants in international litigation and encouraging foreign countries by example to provide similar assistance to our courts.'"  Id. at 46–47.

Four additional "discretionary factors" established by the Supreme Court in Intel Corp. v. Advanced Micro Devices, Inc., 542 U.S. 241 (2004), also "'bear consideration' in arriving at a decision" as to whether discovery sought under Section 1782 should be allowed.  In re Schlich, 893 F.3d at 47 (quoting Intel, 542 U.S. at 264).  The Court must consider: (1) "whether the person from whom discovery is sought is a party to the foreign proceeding, in which case 'the need for § 1782(a) aid generally is not as apparent' because a 'foreign tribunal has jurisdiction over those appearing before it, and can itself order them to produce evidence;'" (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance;" (3) "whether the request 'conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States;'" and (4) "whether the request is 'unduly intrusive or burdensome' to the extent that it should either be 'trimmed' or rejected outright."  Id. (citing Intel, 542 U.S. at 264–65).  The Court "must first determine whether the statutory requirements are met.  If they are, the [C]ourt [must] then consider the four discretionary factors before arriving at a decision."  Id.

"[I]t is neither uncommon nor improper for district courts to grant applications made pursuant to § 1782 *ex parte*.  The respondent's due process rights are not violated because he can later challenge any discovery request by moving to quash pursuant to Federal Rule of Civil Procedure 45(c)(3)."  Gushlak v. Gushlak, 486 F. App'x 215, 217 (2d Cir. 2012).  Courts adjudicating an *ex parte* application for a subpoena pursuant to Section 1782 "should still consider the Intel factors regardless of the absence of the respondent."  In re Schlich, 893 F.3d at 50.

Here, two of the four statutory requirements of Section 1782 are not satisfied.[2]  Fagan has not satisfied the second Section 1782 statutory requirement because he has not shown that he is seeking discovery "for use in a proceeding in a foreign or international tribunal."  28 U.S.C. § 1782(a).  A foreign proceeding need not be "pending" or "imminent" in order for an applicant to secure relief under Section 1782, but it must be "within reasonable contemplation."  Certain Funds, Accounts &/or Inv. Vehicles v. KPMG, L.L.P., 798 F.3d 113, 123 (2d Cir. 2015) (quoting Intel, 542 U.S. at 243 (2004)).  As the Second Circuit put it, "[a]t a minimum, a § 1782 applicant must present to the district court some concrete basis from which it can determine that the contemplated proceeding is more than just a twinkle in counsel's eye."  Id. at 124.  Fagan is a complaining witness in a criminal investigation in South Africa, but the inaccurate information included in the sole document evidencing Fagan's communications with the South African police calls into question the basis for that investigation.  See supra at Section I (quoting email that

---

[2] The first statutory requirement, that the person from whom discovery is sought resides or is found in the district where the court sits, is satisfied because Fagan asserts that the entities he seeks to subpoena maintain an office in Burlington, Massachusetts, which is within this district. App. ¶ 76.  The fourth statutory requirement, that the material sought is not protected by any legally applicable privilege, is also likely satisfied.  Even if the Court was to grant the application, the subpoenaed entities would still be afforded an opportunity to object and move for a protective order to the extent privileged information was implicated.

suggests Fagan was himself a victim of the scheme); <u>see also</u> [ECF No. 1-1 at 2].  Further, the

mere fact of a complaint is not sufficient to establish an actual or reasonably foreseeable

proceeding.  Fagan asserts that "the South African Police will welcome evidence that can be

secured through the US Courts and that evidence will be used in the future prosecutions," App.

¶ 35, but this claim is wholly unsubstantiated.

The third Section 1782 statutory requirement, that the request be made "by a foreign or

international tribunal or upon the application of any interested person," is likewise not satisfied.

"[T]he phrase 'any interested person' is . . . interpreted broadly and may encompass those who

'prompt an investigation,' *i.e.*, a complainant, who '[has] a right to submit information' and who

'possess a reasonable interest in obtaining judicial assistance.'"  <u>Lazaridis v. Int'l Ctr. for</u>

<u>Missing & Exploited Children, Inc.</u>, 760 F. Supp. 2d 109, 113 (D.D.C. 2011) (quoting <u>Intel</u>, 542

U.S. at 256), <u>aff'd sub nom.</u> <u>In re Application for an Order Pursuant to 28 U.S.C. § 1782</u>, 473 F.

App'x 2 (D.C. Cir. 2012).  In <u>Intel</u>, the Supreme Court held that the complainant who triggered a

European Commission investigation and had a "significant role in the process," "the right to

submit information," and the right to proceed to court if the European Commission's

enforcement apparatus "discontinue[d] the investigation or dismisse[d] the complaint" was an

interested person because those "participation rights" created "a reasonable interest in obtaining

[judicial] assistance."  542 U.S. at 256.  Fagan is not, however, an interested person "in a

proceeding in a foreign or international tribunal" simply because he filed a complaint with the

South African Police Service or because he is acting as an agent for someone who might

theoretically be an interested person.  <u>See id.</u>  Fagan has not shown any likelihood that he will

have a meaningful role or rights in a proceeding before a tribunal in South Africa, or even that he

or his assignors are actual victims of an alleged crime.

Even if Fagan satisfied the minimum statutory requirements of Section 1782, the Court would deny the application upon a consideration of the <u>Intel</u> factors.  The application is most likely an attempt to circumvent ordinary proof-gathering practices for a criminal matter, which would should occur through law enforcement channels rather than through an individual like Fagan.  <u>See</u> <u>Heraeus Kulzer, GmbH v. Biomet, Inc.</u>, 633 F.3d 591, 594 (7th Cir. 2011) ("[D]istrict courts must be alert for potential abuses that would warrant a denial of an application to be allowed to take such discovery.").  The requested discovery would also be unduly intrusive and burdensome given the lack of a proper purpose.

**III.  CONCLUSION**

Accordingly, the application [ECF No. 1] is <u>DENIED</u>.

**SO ORDERED.**

May 28, 2019                                                    <u>/s/ Allison D. Burroughs</u>
                                                               ALLISON D. BURROUGHS
                                                               U.S. DISTRICT JUDGE